**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| **JOSEPH MOORE, on behalf of himself and all other similarly situated persons,** | |
| **Plaintiffs,** | **Case No. _____** |
| **vs.** | **JURY TRIAL DEMANDED** |
| **WILSON LOGISTICS, INC.,** | |
| **Defendant.** | |

## COMPLAINT

Plaintiff Joseph Moore ("Moore" or "Plaintiff"), by and through his undersigned counsel, and for his Complaint against Wilson Logistics, Inc. (a/k/a "Wil-Trans," "Jim Palmer Trucking," and "O&S Trucking") ("Wilson" or "Defendant"), hereby states and alleges as follows:

## CLASS ACTION AND COLLECTIVE ACTION COMPLAINT

### I.      NATURE OF THE ACTION

1.      Plaintiff, and several hundred other similarly situated persons participated in Defendant's Commercial Driver's License ("CDL") driver training program in Springfield, Missouri and worked for Defendant as truck drivers. Plaintiff, on behalf of himself and all other similarly situated truck drivers, brings this lawsuit (1) as a collective action under the Fair Labor Standards Act; and (2) as a Missouri state law class under Rule 23(b)(3) for monetary damages, to recover damages, including unpaid wages liquidated damages, interest, costs and attorneys' fees, and all other relief to which he and other similarly situated truck drivers are entitled.

2.      During the time that Plaintiff and all other similarly situated truck drivers participated in the training program, Defendant failed to pay Plaintiff and all other similarly

situated truck drivers all wages that were due to them under Fair Labor Standards Act and state law and it did not pay wages to them that were free and clear.

3.      First, Defendant has failed to pay truck drivers all minimum wages to which they are entitled for orientation time, in violation of the federal Fair Labor Standards Act (FLSA) and in violation of the Missouri Minimum Wage Law ("MMWL"), Mo. Rev. Stat. § 290.500, *et seq.*

4.      Second, Defendant has failed to pay truck drivers all minimum wages to which they are entitled for over-the-road training, in violation of the FLSA.

5.      Third, Defendant has failed to pay drivers at least the federal minimum wage for all hours worked as over-the-road truck drivers, in violation of the FLSA.

6.      Fourth, Defendant has failed to pay wages free and clear, in violation of the FLSA. Plaintiff seeks recovery of all unpaid wages and unlawful deductions.

II.     **PARTIES**

        A.      **Plaintiff**

7.      Plaintiff Joseph Moore is a current resident of Ladson, South Carolina.  He attended Defendant's orientation and training program and drove for Defendant from approximately August 2020 until December 2020. Plaintiff is an "employee" of Defendant within the meaning of the FLSA and Missouri law.

8.      For the FLSA claims, Plaintiff brings this action on behalf of himself and all similarly situated individuals who may choose to "opt in" to this action pursuant to the FLSA, 29 U.S.C. § 216(b). The claims under the FLSA meet the requirements for collective action certification set forth in 29 U.S.C. §. 216(b).

9.      Pursuant to 29 U.S.C. § 216(b), named Plaintiff Joseph Moore consents to sue as a plaintiff under the FLSA. His consent to sue form is attached to the Complaint as **Exhibit 1.**

10.     Plaintiff Joseph Moore and all others similarly situated are individuals covered by the FLSA because they engaged in commerce or in the production of goods for commerce.

11.     Plaintiff Joseph Moore and all others similarly situated are "employees" within the meaning of the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500.

12.     Plaintiff also brings this action on behalf of himself, and all others similarly situated employees pursuant to Federal Rules of Civil Procedure 23 (b)(3). The proposed class for each of these Missouri state law claims meets the requirements of Rule 23 of the Federal Rules of Civil Procedure for class certification.

**B.     Defendant**

13.     Defendant Wilson Logistics, Inc. ("Wilson" or "Defendant") is a nationwide motor carrier with a current fleet of over 1,000 commercial motor vehicles and over 1,100 drivers.

14.     Defendant Wilson Logistics, Inc. (Missouri Charter No. 00492545) is a Missouri corporation with a principal place of business and corporate headquarters at 3769 East Evergreen Street, Springfield, Missouri 65803. Defendant can be served through its registered agent: 130 South Bemiston Avenue, Suite 500, St. Louis, Missouri 63105.

15.     At all relevant times, Defendant has been an "employer" within the meaning of the FLSA and Mo. Rev. Stat. §290.500.

16.     At all relevant times, Defendant has employed "employee[s]," including Plaintiff and all other similarly situated truck drivers.

17.      Defendant has revenues in excess of $500,000 per year and has employed two or more persons, including the named Plaintiff, who handled and worked on materials which had been moved in interstate commerce.

18.     **"**Wil-Trans" is a fictitious name registered to Wilson Logistics, Inc., 3769 East

3

Evergreen Street, Springfield, Missouri 65803. Defendant does business under the name "Wil-Trans," which includes the operation of its training program.

19.     "Jim Palmer Trucking" and "O&S Trucking" are also fictitious names used by Defendant to conduct business, following mergers and/or acquisitions.  "Wil-Trans Jim Palmer Trucking and O&S Trucking" is a fictitious name registered to Transportation Logistics Corporation International n/k/a Wilson Logistics, Inc. (Charter No. 00492545).

## III.     JURISDICTION AND VENUE

20.     This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq.*

21.     The Court also has jurisdiction over the claims brought under the laws of Missouri pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which the named plaintiff is a citizen of a state different from the Defendant.

22.     This Court also has supplemental jurisdiction for all claims asserted under the Missouri state law pursuant to 28 U.S.C. § 1367 because these claims are part of the same case and controversy as the FLSA claims, the state and federal claims derive from a common nucleus of operative facts, the state claims will not substantially dominate over the FLSA claims, and exercising supplemental jurisdiction would be in the interests of judicial economy, convenience, fairness and comity.

23.     The United States District Court for the Western District of Missouri has personal jurisdiction because Defendant is registered to do business in this State and has its principal place of business located in Springfield, Missouri.

24.     Additionally, Defendant regularly conducts business within this District, including

hiring and employing drivers to work for Defendant in this District.

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business and can be found in this District, and the causes of action set forth herein have arisen and occurred in this District.

## IV.     FACTUAL ALLEGATIONS

### A.     Defendant's Training Program

26.     Defendant is a nationwide motor carrier with a current fleet of over 1,000 commercial motor vehicles and over 1,100 drivers.

27.     Defendant operates as a trucking company and maintains a principal office, corporate headquarters, and driver terminal in Springfield, Missouri.

28.     Upon information and belief, policies concerning driver recruiting, training, classification, and compensation are set by Defendant's executives and managers in the Springfield, Missouri headquarters.

29.     On information and belief, Defendant's payroll department, which is responsible for issuing paychecks and W-2 forms to its company drivers, is located in Springfield, Missouri.

30.     Upon information and belief, Defendant's executives and managers based in Springfield, Missouri oversee all Defendant's departments.

31.     Defendant recruits individuals to work as truck drivers.

32.     Defendant requires individuals to attend orientation or onboarding for approximately one week prior to beginning truck driving for Defendant.

33.     To recruit drivers to work for them, Defendant advertises nationwide its "Paid CDL Training Program," which promised Plaintiff and all other similarly situated truck drivers that they could obtain their CDL and become a company driver with Defendant with no cost to them.

34.     The program is standardized, and the experience was the same for Plaintiff and all other similarly situated truck drivers.

35.     The orientation sessions occur in Defendant's facilities in Springfield, Missouri.

36.     The orientation sessions are unpaid.

37.     The orientation program is conducted by Defendant's employees and agents and uses materials developed by Defendant. The individuals attending orientation are employees of Defendant during orientation.

38.     The substance of the orientation program includes learning about and being trained on Defendant's policies, procedures, and systems.

39.     During orientation, drivers electronically complete new hire paperwork, and a skills assessment and pre-employment drug screen.

40.     Plaintiff Moore attended orientation in Springfield, Missouri beginning in August 2020, and was not paid for orientation.

41.     During the next phase, the "CDL Permit Driving Phase," Plaintiff and other similarly situated truck drivers spent two to three weeks driving over-the-road with a CDL instructor in the passenger seat, supervising all driving and non-driving aspects of the job.

42.     During over-the-road training, the drivers are driving, picking up and delivering loads, and doing everything they would do as a truck driver for Defendant, with a trainer in the passenger seat.

43.     Plaintiff Moore did his over-the-road training, after having received his learner's permit for his CDL license, for approximately three weeks in September and October 2020.

44.     During this time, Plaintiff Moore picked up and delivered loads for Defendant and otherwise did everything that Defendant's drivers do.

6

45.     During the CDL Permit Driving Phase, Defendant did not pay Plaintiff Moore or other similarly situated truck drivers for their time.

46.     Instead, Defendant agreed to "advance" monies weekly to Plaintiff and other similarly situated truck drivers that they would be required to pay back through wage withholdings after they passed their commercial driver's license (or CDL) examination.

47.     The orientation and over-the-road training primarily benefit Defendant, because it prepares drivers to begin driving for Defendant, trains them in Wilson-specific policies and procedures, introduces them to important Wilson managerial employees, and assigns them their initial driving jobs, etc.

48.     After the CDL Permit Driving Phase, Plaintiff and similarly situated truck drivers returned to Springfield, Missouri and took their commercial drivers license examination at Defendant's training facility.

49.     After obtaining their CDLs, Plaintiff Moore and other similarly situated truck drivers were required to continue their training by "team driving" with a more seasoned driver, for approximately 30,000 miles, for several more months.

50.     The team driving phase is the most profitable phase for Defendant and critical to its operations. Requiring employees to work as a part of a team for tens of thousands of miles (at significantly reduced pay) is of a great benefit to Defendant, in that drivers are subject to limitations on the amount of driving time permitted under Department of Labor regulations. Having two drivers available to drive increases the speed in which deliveries can be made. For example, if the drivers are not allowed to run as a team, the senor driver/training instructor must remain on duty and sit in the passenger seat, which means that the truck can only "perform" at the level of a solo driver. In a team driving situation, the truck is able to be moving no less than 22

7

hours per day.

51.     While team driving for Defendant, Plaintiff Moore and other similarly situated truck drivers typically work seven days per week.

52.     While employed as team drivers, these drivers are "on duty" for 24 hours a day, for days on end, due to the nature of long-haul trucking, which is compensable work for the Defendant under Department of Labor regulations.  This work includes, for example: (1) driving the truck for approximately nine to thirteen hours a day; (2) remaining in the truck while the truck is moving so that they can assist the driver in transporting the cargo (or simply to be available to drive if necessary), and in navigation and reporting on traffic conditions, as well as spending time in the sleeper berth so they can maximize driving time under the U.S. Department of Transportation hours-of-service rules; (3) waiting for cargo to be loaded or unloaded while in the truck or its immediate vicinity; (4) performing inspections of the truck; (5) fueling up the truck and performing routine maintenance; (6) remaining in the vicinity of the truck to help protect Defendant's and its customers' property; and (7) remaining inside the truck when stopped to log time in the sleeper berth and to help protect Defendant's and its customers' property.

53.     During this team driving time, Plaintiff Moore and other similarly situated truck drivers were paid as follows: For the first 10,000 miles, Defendant paid 12 cents per mile, or a minimum of $600 per week (before deductions). For the remaining 20,000 miles, Defendants paid 14 cents per mile, or a minimum of $700 per week (before deductions). Defendant compensates drivers for the non-driving time at $0 per hour, which violates the FLSA.

54.     Under the FLSA, however, truck drivers are entitled to receive at least the federal minimum wage for every hour worked. *See* 29 U.S.C. § 206(a). "Under certain conditions an employee is considered to be working even though some of his time is spent in sleeping or in

certain other activities." 29 C.F.R. § 785.20.

55.     During the time Plaintiff Moore was employed by Defendant, and like the other similarly situated truck drivers, Plaintiff was away from his home, on company duty for more than 24 hours at a time and for days on end.  Defendant failed to pay Plaintiff and all other similarly situated truck drivers for all the time that they worked,  including but not limited to (a) time spent in the sleeper berth and/or passenger seat of the truck when driving as a team, (b) time when the truck is stopped, but drivers remain responsible for responding to communications from dispatch, monitoring the safety and security of their trucks and loads, and otherwise complying with Defendant's policies, and (c) on-call time while waiting for dispatch to assign the driver(s) another load.

56.     Additionally, and alternatively, the weekly wages that team drivers receive do not always adequately compensate them for all compensable hours at the federal minimum wage.

57.     Under the FLSA, Defendant is required to pay Plaintiff and other truck drivers minimum wages for all work they perform.

58.     Defendant has failed to compensate Plaintiff and other truck drivers for all hours worked during orientation and over-the-road training at the federal minimum wage.

59.     Defendant has also failed to compensate Plaintiff and other truck drivers for all hours worked as team drivers at the federal minimum wage .

60.     Defendant's compensation to Plaintiff Moore, and other similarly situated individuals, is also not paid free and clear.

61.     Specifically, Defendant requires drivers to sign a training contract, which provides that, if they do not drive for Defendant for at least twelve continuous months, they are required to pay $3,500 at one time or $3,500 plus a $227.51 "finance charge" to Defendant.

9

62.     If, during Orientation, the CDL Permit Driving Phase, or the CDL Team Driving Phase, the driver is discharged, terminated or quits, Defendant accelerates the entirety of the debt incurred by the driver and then seeks to collect upon the debt.

63.     After the drivers complete the CDL Team Driving Phase, drivers return to Springfield and are assigned their own truck. Because they have participated in Defendant's training program, the drivers are required to work for Defendant for one more year, in order for Defendant to excuse their debt they incurred for Defendant's training program.

64.     If, during this one-year period, the driver is discharged, terminated or quits, Defendant accelerates the entirety of the debt incurred by the driver and then seeks to collect upon the debt.

65.     Defendant's efforts to collect these monies violate the FLSA because the wages have not been paid free and clear.

66.     Also, to the extent that Defendant receives monies from drivers who have not driven for Defendant for at least twelve continuous months (whether through paycheck deductions or post-employment collections), those are unlawful deductions from wages in violation of the FLSA.

67.     Plaintiff Moore's employment was involuntarily terminated in December 2020. Defendant thereafter accelerated the debt of Plaintiff Moore, and other similarly situated truck drivers and collected or sought to collect upon the debt which violated the FLSA in that their prior pay had not been paid free and clear and resulted in further minimum wage violations.

**B.     *Kevin Snider v. Wilson Logistics, Inc. and Jim Palmer Trucking Company* Class Action**

68.     Defendant is aware that its training program is in violation of state and federal law.

69.     Defendant was named as a defendant in an action captioned as *Kevin Snider v. Wilson Logistics, Inc. and Jim Palmer Trucking Company*, Case No. 18-2-19565-9 SEA, Superior Court for King, County, Washington.

70.     The *Snider* class action was limited to Washington resident drivers employed by Defendant between August 3, 2015 and November 7, 2019.  The issues resolved by way of the class action settlement were whether the Defendants violated Washington State law by failing to pay Washington drivers (1) a minimum wage for time spent in orientation, (2) overtime compensation for hours worked beyond forty in a week, (3) a minimum wage for time spent while "on duty not driving," and (4) for rest breaks.

71.     The net effect of Defendant's policy and practice is that Defendant willfully fails to pay minimum wage in order to save costs, increase its profits and undercut its competition.

## V.     COLLECTIVE AND CLASS ALLEGATIONS

### A.     FLSA Collective Action

72.     Plaintiff Moore brings Count I, the FLSA claim, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b), on behalf of himself and on behalf of all other similarly situated individuals.

73.     Pending any modifications necessitated by discovery, named Plaintiff Moore preliminarily defines the collective for which he seeks certification under section 216(b) as follows:

> *All individuals who have attended orientation and/or over-the-road training and/or have done team driving for defendant during the applicable statutory period.*

74.     The FLSA claim may be pursued by those who opt in to this case, pursuant to 29 U.S.C. § 216(b). The number and identity of other plaintiffs yet to opt-in and consent to be party

plaintiffs may be determined from the records of Defendant, and potential class members may easily and quickly be notified of the pendency of this action through direct mail, electronic mail and text messaging.

75.    These claims meet the requirements for collective action certification under the FLSA. All potential opt-in plaintiffs are similarly situated with respect to the FLSA claims because they all performed work for Defendant for which they were not compensated at the full federal minimum wage (and/or for which their wages were not paid free and clear), and all suffered from the same unlawful policies.

**B.    Missouri State law Rule 23(b)(3) Class Action Allegations.**

76.    Plaintiff brings Counts II-III as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3), on behalf of himself and the following class of persons:

> *A nationwide opt out class that includes all individuals who attended orientation for Defendants in Missouri during the applicable statutory period and/or have performed work for Defendant for which they have not been adequately compensated.*

77.    Plaintiff is a member of the proposed Class.

78.    The Missouri state law claims, if certified for class-wide treatment, may be pursued by all similarly situated persons who do not opt out of the Class.

79.    The classes satisfy the numerosity standards in that the Class is expected to have several hundred members.  As a result, joinder of all class members in a single action is impracticable. Each of the class members is, however, readily identifiable using objective criteria from the information and records in the possession or control of Defendant. Class members may be informed of the pendency of this class action through direct mail, electronic mail and text messaging.

80.    There are questions of fact and law common to the class that predominate over any

questions affecting individual members. In fact, the wrongs suffered and remedies sought by Plaintiff and the other members of the class are identical and premised upon an illegal course of conduct perpetrated by Defendant. The only material difference between the class members' claims is the exact monetary amount to which each member of the class is entitled. The questions of law and fact common to the class arising from Defendant's actions include, without limitation, the following:

    a. Whether the class members were not paid for all training time;

    b. Whether Defendant paid its employees at least the minimum wage for all hours worked;

    c. Whether the class members were paid by the mile without regard to the number of hours worked (and were not paid at all for some work);

    d. Whether all class members were paid based on 12 or 14 cents per mile or $600-700 a week;

    e. Whether Defendant knew or had reason to know its policies and compensation practices were unlawful;

    f. Whether Defendant retained a benefit from such unlawful policies and compensation practices;

    g. Whether Defendant's payroll records utilized standardized codes and other data from which the class members' claims can be analyzed;

    h. Whether the class members each had unlawful deductions taken from their paychecks; and

    i. Whether the Class members were paid their wages free and clear.

81.     The aforementioned common questions, among others, predominate over any questions affecting individual persons, and a class action is proper as it will achieve and promote consistency, economy, efficiency, fairness, and equity.

82.     Plaintiff's claims are typical of those of the class because the class members have been paid pursuant to the same compensation structure and were subject to the same or similar unlawful practices as the Plaintiff.

83.     Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class he seeks to represent. Plaintiff has suffered economic injury in his individual capacity from the practices complained of and is ready, willing and able to serve as class representative. The interests of the members of the class will be fairly and adequately protected by Plaintiff and undersigned counsel, who have experience in employment and class action lawsuits. Neither Plaintiff nor his counsel have any interest that might cause them not to vigorously pursue this action.

84.     Certification of the class under Federal Rule 23(b)(3) as defined above is appropriate in that Plaintiff and the class members seek monetary damages and common questions predominate over any individual questions. Further, there will be no difficulty in the management of this litigation as a class action because this is an uncomplicated case of unpaid wages that should be mathematically ascertainable from business records of Defendant, and the class claims are typical of those pursued by victims of these violations.

85.     A class action is the appropriate method for the fair and efficient adjudication of this controversy.  Defendant has acted or refused to act on grounds generally applicable to the class.  The presentation of separate actions by individual class members would create a risk of inconsistent and varying results, risk the establishment of incompatible standards of conduct for

Defendant, and/or substantially impair or impede the ability of class members to protect their interests.

86.     Maintenance of this action as a class action is a fair and efficient method to resolve this controversy. It would be impracticable and undesirable for each member of the class who suffered harm to bring a separate action. Furthermore, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a class action can determine the rights of all class members in conformity with the interests of efficiency and judicial economy.

## V.     CAUSES OF ACTION

### COUNT: VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938

87.     Plaintiff incorporates by reference the statements and allegations contained in the above paragraphs as though more fully and completely set forth herein.

88.     At all times material herein, Plaintiff and all other similarly situated employees have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

89.     The FLSA regulates, among other things, the payment of minimum wage by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 206(a).

90.     The FLSA requires each covered employer, such as Defendant, to compensate all non-exempt employees at the federal minimum wage for services performed.

91.     The FLSA also requires each covered employer, such as Defendant, to pay all wages free and clear.

15

92.     Defendant is subject to the minimum wage requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in commerce.

93.     Plaintiff brings this Complaint pursuant 29 U.S.C. § 216(b), on behalf of all persons who were, are, or will be employed by the Defendant as similarly situated employees within three years from the commencement of this action who have not been compensated for their time, and/or who have not been compensated at the proper minimum wage for all services performed.

94.     Defendant violated the FLSA by failing to compensate Plaintiff, and other similarly situated employees, at the minimum wage.

95.     Upon information and belief, Plaintiff Moore, and similarly situated truck drivers, regularly received less than the federal minimum wage for all hours worked during numerous workweeks.

96.     Defendant also violated the FLSA by failing to compensate Plaintiff, and other similarly situated truck drivers, their wages free and clear.

97.     Upon information and belief, in the course of perpetrating these unlawful practices, Defendant has also willfully failed to keep accurate records of all hours worked by its employees.

98.     Plaintiff and all similarly situated truck drivers are victims of a uniform and company-wide compensation policy. Upon information and belief, this uniform policy, in violation of the FLSA, has been applied to all truck drivers employed by Defendant during the last three years.

99.     Plaintiff and all similarly situated truck drivers are entitled to damages equal to the mandated minimum wage within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendant acted willfully and knew, or showed reckless disregard of whether its conduct was prohibited by the FLSA.

100.    Defendant has acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff and other similarly situated truck drivers are entitled to recover an award of liquidated damages in an amount equal to the amount of minimum wage described pursuant to Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find Defendant did not act willfully in failing to pay minimum wage, Plaintiffs and all similarly situated truck drivers are entitled to an award of prejudgment interest at the applicable legal rate.

101.    As a result of the aforesaid willful violations of the FLSA, wages have been unlawfully withheld by Defendant from Plaintiff and all similarly situated truck drivers. Accordingly, Defendant is liable pursuant to 29 U.S.C. § 216(b), together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

WHEREFORE, Plaintiff and all similarly situated truck drivers demand judgment against Defendant and pray for: (1) designation of this action as a collective action on behalf of all similarly situated employees and prompt issuance of notice to all similarly situated employees (the FLSA class), apprising them of the pendency of this action; (2) compensatory damages; (3) liquidated damages; (4) attorneys' fees and costs as allowed by Section 16(b) of the FLSA; (5) pre-judgment and post-judgment interest as provided by law; and (6) such other relief as the Court deems fair and equitable.

## COUNT II: VIOLATIONS OF MISSOURI MINIMUM WAGE LAW, MO. REV. STAT. § 290.500, *et seq.*

102.    Plaintiff incorporates by reference the statements and allegations contained in the above paragraphs as though more fully and completely set forth herein.

103.    At all times material herein, Plaintiff and all other similarly situated employees have been entitled to the rights, protections, and benefits provided under the Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.500, *et seq.*

104.    Defendant, in violation of Mo. Rev. Stat. § 290.502, failed to compensate Plaintiff and those similarly situated the statutory minimum wage for each hour worked.

105.    These employees are similarly situated in that they are all subject to Defendant's identical compensation policies and plan that fails to lawfully compensate them.

106.    This Complaint is brought and maintained as a class action pursuant to Federal Rule 23(b)(3) for all state law claims asserted by the Plaintiff because his claims are similar to the claims of the class members.

107.    The names and addresses of the class members are available from Defendant.  The Defendant failed to compensate Plaintiff and the class members for all training and team driving at the proper rate of pay, and therefore, Defendant has violated, and continues to violate, the Missouri wage laws, Mo. Rev. Stat. 290.500, *et. seq.*

108.    The Plaintiff, on behalf of himself and all similarly situated employees of Defendant who compose the class, seeks damages in the amount of all respective unpaid minimum wages plus liquidated damages, as provided by the MMWL and such to legal and equitable relief as the Court deems just and proper.

109.    The Plaintiff, on behalf of himself and all similarly situated employees of Defendant who compose the class, seeks recovery of all attorney fees, costs, and expenses of this

action, to be paid by Defendant, as provided by Mo. Rev. Stat. 290.500, *et. seq.*

WHEREFORE, Plaintiff, on behalf of himself and all proposed class members, demands judgment against Defendant and prays for: (1) designation of this action as an action on behalf of the proposed class members and prompt issuance of notice to all class members (the Missouri Wage Law class), apprising them of the pendency of this action; (2) designation of Plaintiff as Representative Plaintiff, acting for and on behalf of the class members; (3) compensatory damages; (4) liquidated damages; (5) attorneys' fees and costs; (6) pre-judgment and post-judgment interest as provided by law; and (7) such other relief as the Court deems fair and equitable.

## COUNT III: QUANTUM MERUIT/UNJUST ENRICHMENT

110.    Plaintiff incorporates by reference the statements and allegations contained in the above paragraphs as though more fully and completely set forth herein.

111.    Defendant has been and is being unjustly enriched at the expense of Plaintiff and other similarly situated truck drivers by making deficient payments for work performed by Plaintiff and other similarly situated truck drivers.  Defendant has been and is being enriched at the expense of Plaintiff and other similarly situated truck drivers because Plaintiff and others were not properly compensated for their work.

112.    Defendant has been and is being unjustly enriched by accelerating the Class members' debts and charging the Class members for unearned training program costs and fees and that are in excess of the true costs to Defendant.  It would be unjust to permit Defendant to be enriched by accelerating the Class members' debts and charging the Class members for unearned training program costs and fees and that are in excess of the true costs to Defendant.

113.    Defendant intentionally refused to pay Plaintiff and other similarly situated employees at the proper rate for all hours worked. Defendant knows or should know the proper

rate of pay for Plaintiff and other similarly situated employees. Such wrongful conduct demonstrates bad faith on the part of Defendant.

114.    It would be unjust to permit Defendant to retain the benefits from the unpaid work performed by Plaintiff and other similarly situated truck drivers.

WHEREFORE, Plaintiff, on behalf of himself and all proposed class members, demands judgment against Defendant and prays for: (1) designation of this action as an action on behalf of the proposed class members and prompt issuance of notice to all class members (the Quantum Meruit / Unjust Enrichment Class), apprising them of the pendency of this action; (2) designation of Plaintiff as Representative Plaintiff, acting for and on behalf of the class members; (3) compensatory damages; (4) attorneys' fees and costs; (5) pre-judgment and post-judgment interest as provided by law; and (6) such other relief as the Court deems fair and equitable.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury for all issues so triable.

Date: August 12, 2021                    Respectfully Submitted,

**HODES LAW FIRM, LLC**

*/s/ Garrett M. Hodes*
Garrett M. Hodes, MO #50221
6 Victory Lane, Suite 6
Liberty, Missouri 64068
(816) 222-4338 (Phone)
(816) 931-1718 (Fax)
garrett@hodeslawfirm.com

**CRIMMINS LAW FIRM, LLC**

*/s/ Matthew R. Crimmins*
Matthew R. Crimmins, MO #53138
Virginia Stevens Crimmins, MO #53139
214 S. Spring Street
Independence, Missouri 64050
Tel: (816) 974-7220
Fax: (855) 974-7020
m.crimmins@crimminslawfirm.com
v.crimmins@crimminslawfirm.com

**FAIR WORK, P.C.**

*/s/ Hillary Schwab*
Hillary Schwab, (to be admitted *pro hac vice*)
192 South Street, Suite 450
Boston, MA 02111
Tel. (617) 607-3261
Fax. (617) 488-2261
hillary@fairworklaw.com

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

**JOSEPH MOORE, on behalf of himself
and all other similarly situated persons,**

**Plaintiffs,**

**vs.**

**WILSON LOGISTICS, INC.,**

**Defendant.**

Case No. _____

## CONSENT TO SUE

1.     I have attended orientation to work as a truck driver and/or have worked as a truck driver for Defendant.

2.     I hereby consent to become a plaintiff in this case in connection with the claims under the federal Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and to be bound by judgment by the court or any settlement or resolution of this lawsuit.

3.     I designate Fair Work, P.C., the Hodes Law Firm, LLC, and the Crimmins Law Firm, LLC to represent me for all purposes in this lawsuit.

Signature: _Joseph L. Moore_      Aug 11, 2021

Joseph L. Moore (Aug 11, 2021 18:19 EDT)

Name: Joseph L. Moore

JS 44 (Rev 09/10)

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

## CIVIL COVER SHEET

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Western District of Missouri.

**The completed cover sheet must be saved as a pdf document and filed as an attachment to the Complaint or Notice of Removal.**

**Plaintiff(s):**

First Listed Plaintiff:
Joseph L. Moore ;
**County of Residence:** Outside This District

**Defendant(s):**

First Listed Defendant:
Wilson Logistics, Inc. ;
**County of Residence:** Greene County

**County Where Claim For Relief Arose:** Greene County

**Plaintiff's Attorney(s):**

Garrett M. Hodes (Joseph Moore)
Hodes Law Firm, LLC
6 Victory Lane, Suite 6
Liberty, Missouri 64068
**Phone:** (816) 222-4338
**Fax:** (816) 931-1718
**Email:** garrett@hodeslawfirm.com

Virginia Stevens Crimmins (Joseph Moore)
Crimmins Law Firm, LLC
214 S. Spring Street
Independence, Missouri 64050
**Phone:** (816) 974-7220
**Fax:** (855) 974-7020
**Email:** v.crimmins@crimminslawfirm.com

Hillary Schwab (Joseph Moore)
Fair Work, P.C.
192 South Street, Suite 450
Boston, Massachusetts 02111
**Phone:** (617) 607-3261
**Fax:** (816) 488-2261
**Email:** hillary@fairworklaw.com

Matthew Robert Crimmins (Joseph Moore)
Crimmins Law Firm, LLC
214 S. Spring Street
Independence, Missouri 64050
**Phone:** (816) 974-7220
**Fax:** (855) 974-7020
**Email:** m.crimmins@crimminslawfirm.com

**Defendant's Attorney(s):**

**Basis of Jurisdiction:** 3. Federal Question (U.S. not a party)

**Citizenship of Principal Parties** (Diversity Cases Only)

**Plaintiff:** N/A

**Defendant:** N/A

**Origin:** 1. Original Proceeding

**Nature of Suit:** 710 Fair Labor Standards Act

**Cause of Action:** Violations of Fair Labor Standards Act, 29 U.S.C. § 216(b), and Missouri Minimum Wage Law, Mo. Rev. Stat. § 290.527

**Requested in Complaint**

**Class Action:** Class Action Under FRCP23

**Monetary Demand (in Thousands):** In excess of $75,000

**Jury Demand:** Yes

**Related Cases:** Is NOT a refiling of a previously dismissed action

---

**Signature:** Garrett M. Hodes

**Date:** 8/12/2021

If any of this information is incorrect, please close this window and go back to the Civil Cover Sheet Input form to make the correction and generate the updated JS44. Once corrected, print this form, sign and date it, and submit it with your new civil action.