IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **JOSEPH MOORE,** on behalf of himself and all other similarly situated persons,<br><br>Plaintiffs,<br><br>**v.**<br><br>**WILSON LOGISTICS, INC.,**<br><br>Defendant. | Case No. 6:21-cv-03212-BP |

**PLAINTIFFS' SUGGESTIONS IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

The parties have reached a proposed settlement of all claims in this case on the following terms, subject to Court approval:

1. $250,000 to be paid to members of the FLSA collective and Rule 23 class, to resolve all claims in this matter and to be divided among the various categories of individuals, as set forth in detail in the Settlement Agreement (Exhibit 1), ¶ 2, and in the Background section, *infra*;

2. $300,000 to Plaintiffs' counsel for attorneys' fees and costs ($250,000 for fees and $50,000 for costs), which amount was separately negotiated;

3. Up to $25,000 to Plaintiffs' counsel for reimbursement of amounts paid to the Settlement Administrator to administer the settlement;

4. An agreement by Wilson to zero out the balances of all members of the Rule 23 class and/or FLSA collective purportedly relating to unpaid or owed training costs and to cease all efforts to collect those amounts, to cease communications to the individuals concerning those

amounts alleged to be due or owing, and to cease otherwise identifying those amounts as monies owed to Wilson by those individuals; and

5. A release by members of the Rule 23 class and FLSA collective of all claims brought in this case.

The parties' Settlement Agreement, with attachments, is attached hereto as Exhibit 1. Plaintiffs request that the Court enter a Preliminary Settlement Approval Order:

- Preliminarily approving the proposed settlement and proposed distribution of settlement funds as fair and reasonable;
- Approving the proposed notice to be sent out to the class/collective about the settlement; and
- Setting a date and time for the Final Settlement Approval Hearing in September 2025.

## BACKGROUND

### I. PROCEDURAL POSTURE

Plaintiff Joseph Moore filed this case on behalf of himself and all other similarly situated drivers at Defendant Wilson Logistics, Inc., challenging two practices. First, under the Missouri Minimum Wage Law (MMWL) and the Fair Labor Standards Act (FLSA), Plaintiff challenged Wilson's failure to pay wages to D seat drivers during its training program. Second, under the FLSA, Plaintiff challenged Wilson's failure to pay at least the federal minimum wage for all hours worked as B and C seat drivers. Doc. 1.

The Court certified a Rule 23 class for the D seat claim under the MMWL and certified a collective for the FLSA claims. Doc. 56. Notice went out to the class and the collective. The

Rule 23 class is comprised of 1,012 individuals, and 411 individuals opted in to join the case for the FLSA claims (including Plaintiff Moore).[1]

After discovery and analysis of data for all class members and members of the collective, the parties cross-moved for summary judgment. The Court issued several rulings on summary judgment, holding: (1) B and C seat drivers are working and entitled to compensation for all hours under dispatch minus eight hours per day; (2) the FLSA's two-year statute of limitations applied to the B and C seat claims; and (3) D seat drivers were not employees of Wilson during their D seat driving under the FLSA and the MMWL. ECF Doc. Nos. 200, 207.

The parties attended mediation with the Honorable Willie J. Epps, Jr. of the United States District for the Western District of Missouri on March 6, 2025, and reached a global resolution of the case.

## II. <u>SETTLEMENT TERMS</u>

This settlement is on behalf of all members of the certified Rule 23 class and FLSA collective. The amount of the settlement for the class/collective totals $250,000, and Plaintiffs propose that amount be distributed as follows:

- $136,550 to be distributed to members of the FLSA collective for the two-year statute of limitations, proportional to their damages as calculated by Dr. Liesl Fox by calculating all dispatch time and subtracting eight hours per day from compensable time as set forth in Dr. Fox's Revised Supplemental Report dated July 23, 2024, Table 6, "Allowing 8 Sleep Hours per Day."

- A $5,000 dispute fund, which shall be held during the notice period to resolve disputes that may arise. Plaintiffs' counsel shall be responsible for making determinations about how to resolve disputes. After the close of the notice period and before issuance of payments, any amounts not used from the dispute fund shall be redistributed as part of the amounts to members of the FLSA collective for the two-year statute of limitations.

- $7,500 to be paid as a service payment to Named Plaintiff Joseph Moore.

---

[1] There is overlap between the two groups; there are a total of 1,104 individuals who are affected by this settlement, as Rule 23 class members, FLSA collective members, or both.

- A total of $6,000 be paid as $250 service payments to each of twenty-four opt-in plaintiffs who responded to written discovery.

- $100 each to individuals who are members of the FLSA collective and have damages within the three-year statute of limitations but not within the two-year statute of limitations, according to Dr. Fox's calculations, and to those individuals who are members of the FLSA collective whose damages would otherwise be less than $100 according to Dr. Fox's calculations.

- $50 each to members of the Rule 23 class and individuals who are members of both the Rule 23 class and the FLSA collective who have balances that are being zeroed out.

- $100 each to members of the Rule 23 class and individuals who are members of both the Rule 23 class and the FLSA collective who do not have balances that are being zeroed out.

Settlement Agreement (Exhibit 1), ¶ 2.a.

In addition to these monetary amounts, the settlement includes the following non-monetary terms:

- Wilson shall release entitlement to and shall not pursue (and/or shall discontinue) any collection efforts for any Program Fees/Tuition for Wilson's CDL Training Program alleged to be owed to Wilson as of the date of the Court's approval of the agreement by the Rule 23 and FLSA collective members. This includes Wilson taking all action to cease any collection of these monies by third-party collection agencies and/or any collection of these monies through deductions from drivers' pay (for work for Wilson or for any other entities).

- Wilson shall not issue 1099 forms or other tax forms to the Rule 23 and FLSA collective members for the release from debt because no compensatory payment will issue. This provision shall be enforceable to the fullest extent allowable by law.

- The parties agree that these are releases and will use best efforts to characterize this relief so that the drivers do not suffer negative tax consequences from the release. Wilson further represents that (1) it is not an "applicable entity" pursuant to 26 U.S.C. § 6050P(c) and 26 CFR §§ 1.60P-1(b)(2)(i)(E) and 1.605P-2(c) because it is not a financial institution or a direct or indirect subsidiary of a financial institution and lending money is not a significant part of its business, and (2) its agreement to release the Rule 23 and FLSA collective members from these monies is not an "identifiable event" triggering reporting requirements because the parties' agreement is not a discharge of debt but instead is an agreement not to enforce certain contractual provisions. The parties agree that the notice to class/collective members shall provide accurate and easily understood information about the potential tax consequences of these releases.

- Wilson and related entities shall give no new or additional negative references to any driver for having allegedly defaulted on any amounts released.

*Id.*, ¶ 3.

In exchange for the monetary payments and release, each participating class/collective member would release all wage-and-hour claims that they have asserted or could have asserted in this action against Wilson relating to its training program and any of its insurers, attorneys, directors, officers, board members, fiduciaries, employees, agents, successors, assigns or parent corporations or subsidiaries relating to Wilson's training program. *Id.*, ¶ 5.

Additionally, the parties have agreed to a payment of $300,000 to Plaintiffs' counsel for attorneys' fees, expenses, and costs, which amount was separately negotiated with Judge Epps and is broken down as $250,000 for attorneys' fees and $50,000 for costs. The parties have further agreed that Defendant shall make a payment of up to $25,000 to Plaintiffs' counsel for reimbursement of amounts paid to the Settlement Administrator to administer the settlement. *Id.*, ¶¶ 2.b, 2.c.

The settlement monies shall be paid out within four weeks of the Court's final ruling approving the settlement. *Id.*, ¶ 8.

## III. NOTICE PLAN

Plaintiffs propose that the Notice attached to the Settlement Agreement as Exhibit B be sent to class/collective members by email and first-class mail within thirty days after the Court grants preliminary approval of the settlement and that class/collective members be given sixty days to object to or request exclusion from the settlement as appropriate. *Id.*, ¶ 7.

## ARGUMENT

## I. LEGAL STANDARD

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, costs and rigor of prolonged litigation. *Little Rock School Dist. v. Pulaski Cty. Special School Dist. No. 1,* 921 F.2d 1371, 1383 (8th Cir. 1990) ("The law strongly favors settlements. Courts should hospitably receive them."). When a proposed class-wide settlement is reached, it must be submitted to the Court for preliminary approval. *See* Fed. R. Civ. Proc. 23(e); *see also* H. Newberg & A. Conte, *Newberg on Class Actions* §11.41 (4th. ed. 2011) (hereafter "*Newberg*"); *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (proposed settlements under the FLSA generally require court approval). Preliminary approval is the first of three steps that comprise the approval procedure for settlement of a class action. *See Manual for Complex Litigation* § 21.632 (4th ed. 2012) (hereafter *"Manual"*). The second step is dissemination of notice of the settlement to all class members which informs class members how to make their views on the settlement known to the court. *Manual* § 21.633. The third step is a settlement approval hearing. *Id.*

At the outset, even before the terms of the settlement are assessed, a proposed class settlement enjoys a presumption of fairness. Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." *Newberg* at § 11.41; *see also Little Rock School Dist.*, 921 F.2d at 1391 (stating that class action settlement agreements "are presumptively valid."); *Petrovic v. Amoco Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) (holding that a "strong public policy favors agreements, and courts should approach them with a presumption in their favor.") (quoting *Little*

*Rock*). After the parties' arm's-length negotiations, "judges should not substitute their own judgment as to optimal settlement terms for the judgments of the litigants and their counsel." *Petrovic*, 200 F.3d at 1148-49 (internal quotation marks omitted).

At the preliminary approval stage, the Court must determine whether the settlement is "fair, reasonable and adequate," including whether the settlement is void of obvious substantive or procedural deficiencies. *Manual* at § 21.632; *see also Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982).[2]

In the Eighth Circuit, District Courts are to analyze four factors in determining whether a class action settlement is fair, reasonable, and adequate: "'(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement.'" *Burnett v. Nat'l Ass'n of Realtors*, No. 4:19-CV-00332-SRB, 2024 WL 2842222, at *4 (W.D. Mo. May 9, 2024) (quoting *In re Wireless Tel. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005)).

As the proposed settlement easily meets these criteria,[3] preliminary approval should be granted.

## II. A REVIEW OF THE APPLICABLE FACTORS FAVORS APPROVAL OF THE SETTLEMENT.

[2] Under the FLSA, before approving a settlement, the Court must be satisfied that the settlement was the result of "contested litigation" and involves a fair and reasonable resolution of a bona fide dispute over contested issues. *Lynn's Food Stores, Inc*., 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise of contested issues, the court may approve the settlement to promote the policy of encouraging settlement of litigation. *Id.*; *see also Walton v. United Consumers Club*, 786 F.2d 303, 306 (7th Cir. 1986). This standard sufficiently mirrors the Rule 23 settlement approval standard such that application of the Rule 23 standard suffices for approval of this hybrid Rule 23/FLSA settlement.

[3] On preliminary approval, of course, the fourth factor is not yet considered, as the class has not yet received notice about the settlement.

### A. <u>The Terms of the Proposed Settlement are Fair, Reasonable and Adequate</u>

A preliminary review of the terms of the proposed Settlement leaves no doubts as to its fairness, the propriety of class certification, and/or whether it is appropriate for final approval by the Court. *See* Federal Rule 23(e); *see also Newberg*, § 11.41. Courts are to give "proper deference to the private consensual decision of the parties," since "the Court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Marcus v. State of Kansas, Dept. of Revenue*, 209 F.Supp.2d 1179, 1182 (D. Kan. 2002) ("When a settlement is reached by experienced counsel after negotiations in adversarial setting, there is an initial presumption that the settlement is fair and reasonable.").

Plaintiffs' proposed allocation formula is fair, reasonable, and adequate in that it takes into account the status/viability of and risks associated with the various claims and each individual's potential damages from the case and allocates the settlement monies accordingly. Courts routinely hold that such formulas are fair, reasonable, and adequate.[4] The total amount

---

[4] Indeed, courts have held that a distribution formula that reimburses class members based on the type and extent of their injuries is presumptively reasonable. *See, e.g., Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 328 (3d Cir. 2011) ("Courts generally consider plans of allocation that reimburse class members based on the type and extent of their injuries to be reasonable") (citations omitted); *Schueneman v. Arena Pharmaceuticals, Inc.*, 310CV01959CABBLM, 2020 WL 3129566, at *7 (S.D. Cal. June 12, 2020)(quoting *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) ("The allocation formula used in a plan of allocation 'need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.'"); *Hochstadt v. Bos. Sci. Corp.*, 708 F. Supp. 2d 95, 110 (D. Mass. 2010) (holding that plan of allocation was reasonable because it was based on class members' losses); *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries"); *In re Citric Acid Antitrust Litigation*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (allocation plan that "reimburses class members based on the type and extent of their injuries is generally reasonable").

being distributed for the FLSA claim for the two-year statute of limitations is $130,150. This amount is over 70% of the total ***double*** damages for this claim, as calculated by Plaintiffs' expert witness, Dr. Liesl Fox for all dispatch time excluding eight hours per day. Put another way, FLSA collective members who have claims within the two-year statute of limitations will receive their full single damages plus over 40% of their liquidated damages. Schwab Decl. ¶ 2. This is a fair and reasonable result, in that it tracks the Court's decision on summary judgment while avoiding the risks and delays inherent in going forward with a damages trial and potential appeal. *See, e.g.*, *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 681 (D. Kan. 2009) (granting preliminary approval because, *inter alia*, "[t]he costs of continued litigation are high, and it is possible that plaintiffs could receive little or no pecuniary relief"); *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008) ("The class will be well compensated, relatively speaking, and is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted.").

The settlement also provides for monetary recovery of $50 to $100 per category for individuals for whose claims the Court granted Wilson summary judgment (or whose damages were minimal), *see* ECF Doc. 200, as set forth at 3-4, *supra*, and in the Settlement Agreement (Exhibit 1), ¶ 2.

Finally, the settlement provides for release of purported debts that individuals in the Rule 23 class have relating to Wilson's CDL Training Program and for which Wilson has been engaging in debt collection efforts. As part of the settlement, Wilson has agreed to zero out these balances and cease collection efforts. Wilson has also agreed to give no new or additional negative references to any driver for having allegedly defaulted on any amounts released. The

settlement also makes representations relating to the characterization of these amounts, in order to ensure the most favorable tax consequences possible.[5] The amount being forgiven is substantial. As of March 2025, Wilson calculated the purported balances owed by Rule 23 class members in this case as totaling $1,261,669.95. Schwab Decl. ¶ 3.

The payments of $50 and $100, as well as the substantial amount in forgiven balances, are fair and reasonable resolutions of these claims, where the Court has ruled against Plaintiffs and the class/collective on all of these claims, holding on summary judgment that drivers are not employees of Wilson during the D seat portion of the CDL Training Program and that a two-year statute of limitations, not a three-year statute of limitations, applies to the FLSA claims. Ct. S.J. Dec. on B/C Seat Claims, ECF Doc. 207, at 12-13. As such, in order to recover any relief for these claims, Plaintiffs and the members of the class/collective would have to be successful on appeal and remand, a proposition that involves significant delay and resources and great risk. *See, e.g.*, *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008) ("The presence of such doubt tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation.").

Given the circumstances, the amounts and non-monetary relief that Plaintiffs were able to negotiate for these groups is fair, reasonable, and adequate.

**i. The Parties Engaged in Meaningful Discovery and Vigorous Arm's Length Negotiations before Reaching an Agreement.**

Before reaching a settlement agreement in principle with Defendant, this case was exhaustively litigated, right up to the eve of trial, including substantial investigation of and

---

[5] In a previous case involving New Prime, Inc., the Court approved nearly identical settlement terms relating to relief of purported debts relating to the CDL Training Program. Schwab Decl. ¶ 7.

discovery relating to the claims and damages. In discovery, Plaintiffs obtained all data necessary to calculate damages, retained an expert witness, and had that expert witness perform several rounds of calculations. The parties engaged in extensive expert discovery as well. Additionally, the parties unquestionably engaged arm's length discussions. Indeed, the settlement was reached during a Court-ordered mediation before a Magistrate Judge less than a month before the trial was scheduled to take place. Schwab Decl. ¶ 4.

The settlement negotiations were, at all times, arm's length, and conducted in the utmost good faith. *Id.* The Settlement is fair, reasonable and adequate under the circumstances and justifies preliminary approval.

**B. Rule 23 Certification for Settlement Purposes is Appropriate in this Matter.**

Before granting preliminary approval of a settlement, the Court should also determine that the proposed Class is a proper class for settlement purposes. *See Amchem Prods.,* 521 U.S. at 620; *see also* Manual, § 21.632. "To proceed as a class action, the litigation must satisfy the four prerequisites of Rule 23(a) as well as at least one of the three requirements of Rule 23(b). . . ." *In re Aquila ERISA Litig*., 237 F.R.D. 202, 207 (W.D. Mo. 2006). Here, the Court has already certified the case as a class action. As such, this element is satisfied.

**C. The Class Notice Plan is Appropriate and Conserves Judicial Resources.**

Federal Rule of Civil Procedure 23(c)(2)(B) requires the Court to direct to class members the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 and 175, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974); *In re Urethane Antitrust Litig.*, 251 F.R.D. at 645. The notice must "clearly and concisely state" in "plain, easily understood language" the nature of the action, the definition of the class certified, the class claims and

issues, that a class member may enter an appearance through an attorney if he or she so desires, that the court will exclude from the class any member who requests exclusion, the time and manner for requesting exclusion, and the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

Here, the Notice meets this standard. It clearly advises class/collective members of the nature of the action, the claims at issue, the settlement, that they can participate if they want to, and their rights to exclusion from settlement and rights to object. *See id.* The Notice accurately and fully informs class/collective members of the material terms of the Settlement and their rights pertaining to it. Significantly, the Notice is personalized and informs each individual of which Groups they are a part of, their expected payment as part of each Group, and their particular rights and options relating to the Settlement.

The proposed Notice should be approved because it fairly apprises Settlement Class/Collective members of the settlement's terms, the schedule for future events and deadlines, and their legal rights in connection with the proceedings. Schwab Decl. ¶ 5; *see, e.g., Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 423 (6th Cir. 2012) ("When a class has settled its claims, '[t]he contents of a . . . notice are sufficient if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, . . . that any class member may appear and be heard at the hearing,' . . . and 'information [about] the class members' right to exclude themselves and the results of failure to do so.'" (internal citation omitted)); *Thacker v. Chesapeake Appalachia, L.L.C.*, 259 F.R.D 262, 272 (E.D. Ky. 2009) (finding that the proposed notice – similar to the notice proposed here – satisfied the requirements of Rule 23(c)(2)(B)).

The Notice will be distributed to each class/collective member via email and/or first-class mail, and the Settlement Administrator will use reasonable efforts to maximize the probability that the Notice is received by each individual. The Notice will provide individuals with instructions regarding objecting, requesting exclusion, and updating their contact information. Significantly, here, where the class and collective have already been certified and multiple rounds of notice have already issued, the notice process here is particularly fair. Most of these individuals have already received multiple communications from Plaintiffs' counsel (typically by email), and many of them have communicated with Plaintiffs' counsel during the past few years. Schwab Decl. ¶ 6.

This plan for dissemination of the Notice is also fair, reasonable, and adequate. *See, e.g., Haworth v. New Prime, Inc.*, No. 6:19-03025-CV-RK, 2020 WL 1899276, at *2 (W.D. Mo. Apr. 16, 2020) ("[T]he Court authorizes notice by email with a 60-day opt-in period . . .").

**D. Final Fairness Hearing**

Plaintiffs request that the Court schedule a final fairness hearing to take place in or after approximately late August 2025, to afford the requisite time for the parties to comply with CAFA notice requirements, *see* 28 U.S.C. § 1715.[6] In anticipation of the final fairness hearing, Plaintiffs will submit a final settlement approval motion, reporting on the results of the notice process and asking the Court to finally approve the settlement. Before the final fairness hearing,

[6] The Class Action Fairness Act requires that defendants serve notice of any proposed class action settlement on "the appropriate State Official of each State in which a class member resides and the appropriate Federal official," within ten days after the filing of the settlement agreement in Court and also provides that final approval of a class action settlement may not issue until at least "90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice." 28 U.S.C. § 1715(b), (d). In other words, the earliest date on which final approval may reasonably be entered under CAFA is 100 days after the filing of this motion (10 days for defendants to serve the notice plus 90 days), or August 11, 2025.

Plaintiffs will also petition for attorneys' fees and costs and will request that the Court award the requested service payments.

## III. CONCLUSION

The law favors the compromise and settlement of class action suits. *See Schering-Plough Corp. v. FTC*, 402 F.3d 1056, 1072 (11th Cir. 2005); Newberg, at § 11.41 (and cases cited therein). Plaintiffs suggest that the instant Settlement is fair, reasonable, and adequate and falls within the range of possible approval. Accordingly, Plaintiffs ask the Court to enter an order (i) preliminarily approving the Settlement, (ii) approving the Notice and notice plan; and (iii) scheduling a Final Approval Hearing in or after late September 2025.

Dated: May 2, 2025

Respectfully Submitted,

Virginia Stevens Crimmins, MO #53139
Matthew R. Crimmins, MO #53138
**CRIMMINS LAW FIRM, LLC**
214 S. Spring Street
Independence, Missouri 64050
Tel: (816) 974-7220
Fax: (855) 974-7020
v.crimmins@crimminslawfirm.com
m.crimmins@crimminslawfirm.com

**FAIR WORK, P.C.**

*<u>/s/ Hillary Schwab</u>*________
Hillary Schwab, (*admitted pro hac vice*)
Osvaldo Vazquez, (*admitted pro hac vice*)
192 South Street, Suite 450
Boston, MA 02111
Tel. (617) 607-3261
Fax. (617) 488-2261
hillary@fairworklaw.com
oz@fairworklaw.com

Garrett M. Hodes, MO #50221
**HODES LAW FIRM, LLC**
6 Victory Lane, Suite 6
Liberty, Missouri 64068
(816) 222-4338 (Phone)
(816) 931-1718 (Fax)
garrett@hodeslawfirm.com

**ATTORNEYS FOR PLAINTIFFS, THE FLSA COLLECTIVE AND THE CLASS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was filed on May 2, 2025, via the Court's electronic filing system, which will send Notice of Electronic Filing to all counsel of record.

*/s/ Hillary Schwab*
Hillary Schwab